**Walter B. BILBRO, Plaintiff,**

**v.**

**Nikki Randhawa HALEY, Governor South Carolina Office of Governor; Susan Alford, Director South Carolina Department of Social Services; Mark Hammond, Secretary South Carolina Secretary of State; Dorothy Addison, Director Refugee Resettlement Plan; Curtis M. Loftis, Jr., State Treasurer South Carolina State Treasurer; Mark Keel, Chief South Carolina Law Enforcement Division (SLED); Colonel Michael Oliver, Commander South Carolina Highway Patrol (SCHP); Leroy Smith, Director South Carolina Department of Public Safety; Catherine Heigel, Director South Carolina Department of Health [and] Environmental Control (SCDHEC); Richard**

---

398

Eckstrom, Comptroller South Carolina Office of Comptroller General; Molly Spearman, State Superintendent South Carolina Department of Education South Carolina Superintendent of Education; Ted Goins, President Lutheran Services Carolinas; Jason Lee, Director World Relief Spartanburg; Tim Breene, CEO World Relief Corporation of National Association of Evangelicals; Ambassador Daniel V. Speckhard, President and CEO Lutheran World Relief; All Name Variations as filed United States of America; Barack Hussein Obama, President Chief Executive Officer Executive Office of the United States of America; Jeh Johnson, Secretary U.S. Department of Homeland Security and its subordinate agencies; Gil Kerlikowske, Commissioner U.S. Department of Customs and Border Protection and its subordinate agencies; Leon Rodriguez, Director U.S. Citizenship and Immigration Services and its subordinate agencies; Ronald D. Vitiello, Deputy Chief, Border Patrol U.S. Department of Customs and Border Protection and its subordinate agencies; Thomas S. Winkowski, Acting Director U.S. Department of Immigration and Customs Enforcement and its subordinate agencies; Loretta Lynch, Attorney General U.S. Department of Justice and its subordinate agencies; Anne C. Richard Assistant Secretary of State for Population, Refugees, and Migration and its subordinate agencies; and Jacob J. Lew U.S. Department of Treasury and its subordinate agencies, Defendants.

C/A No. 3:16–767–JFA

United States District Court,
D. South Carolina, Columbia Division.

Signed 01/19/2017

Lauren L. Martel, Lauren Martel Law Office, Hilton Head, SC, for Plaintiff.

Kenneth Paul Woodington, William Henry Davidson, II, Davidson Morrison and Lindemann, Kristen Elizabeth Horne, Nelson Mullins Riley and Scarborough, Eugene H. Matthews, Richardson Plowden and Robinson, Edward Scott Winburn, SC Department of Education, Steve Suggs, SC Appleseed Legal Justice Center, Barbara Murcier Bowens, US Attorneys Office, Columbia, SC, Samuel. W. Outten, Nelson Mullins Riley and Scarborough, Greenville, SC, Kristi Lee Graunke, Southern Poverty Law Center, Atlanta, GA, Erez Reuveni, US Department of Justice, Washington, DC, Joseph Anton Darrow, US Department of Justice, pro hac, vice, for Defendants.

## ORDER

JOSEPH F. ANDERSON, JR., United States District Judge

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case was originally filed in state court on February 12, 2016, against South Carolina Department of Social Services ("SCDSS"), SCDSS's Director Susan Alford, Refugee Resettlement Program Director Dorothy Addison, Governor Nikki R. Haley, Lutheran Services Carolinas, and World Relief Spartanburg along with its director, Jason Lee, essentially to cease the "state refugee program" (hereinafter "State Plan"). ECF No. 1–1. On March 10, 2016, the case was removed to this Court under federal question jurisdiction due to the claims relating to the federal Immigration and Nationality Act of 1952 [1] ("INA"), the Refugee Act of 1980 [2] ("Refugee Act"), (collectively, the "Acts") and the imple-

mentation in South Carolina of the federal refugee resettlement program. ECF No. 1.

Upon removal, various motions, to include motions to dismiss (ECF Nos. 10–11 and 33–35), a motion to remand (ECF No. 13), and motion for summary judgment (ECF No. 30), were filed in this case, along with an amended complaint (ECF No. 24). On May 23, 2016, a status conference was held to address the various motions and amended complaint. ECF No. 43. At the hearing, the Plaintiff withdrew his motion to remand and made an oral motion to amend his complaint. *Id.* The Court granted the oral motion to amend the complaint and found all remaining motions to be moot. *Id.*

At the time the Court granted Plaintiff's motion to amend, the amended complaint was thirteen (13) pages long with additional attachments and named seven (7) defendants, including the directors of the named entities. ECF No. 24. On June 20, 2016, Plaintiff filed his second amended complaint, which is forty-six (46) pages long with attachments totaling over 200 pages against twenty-five (25) defendants, with their associated entities, essentially alleging that refugees are being improperly vetted and resettled in South. Carolina placing Plaintiff in imminent harm and requesting the State Plan to be enjoined and an accounting to be done. ECF Nos. 46–47, 49–58.

The defendants will be addressed as five distinct groups based upon their jointly made motions: (1) Mark Hammond, South Carolina Secretary of State ("Hammond"); (2) Molly Spearman, South Carolina Department of Education Superintendent ("Spearman"); (3) State Defendants [3]; (4)

---

**1.** Immigration and Nationality Act of 1952, Pub. L. 82–414, 66 Stat. 163 (1952), codified at 8 U.S.C. §§ 1101 *et seq.* and subsequent amendments.

**2.** Refugee Act of 1980, Pub. L. 96–212, 94 Stat. 102 (1980).

**3.** Nikki Randhawa Haley, Governor for South Carolina Office of Governor; Susan Alford, Director for South Carolina Department of

Ted Goins, President for Lutheran Services Carolinas; Jason Lee, Director for World Relief Spartanburg; and Tim Breene, CEO for World Relief Corporation of National Association of Evangelicals (collectively "Relief Services"); and (5) Federal Defendants.[4]

In his second amended complaint, Plaintiff alleged fourteen (14) causes of action, stated verbatim as:

COUNT ONE[:] Violation of The Take Care Clause, Art. II, § 3, Cl. 5

COUNT TWO: Violation of the APA, *5 U.S.C. § 553*

COUNT THREE: Violation of the APA, *5 U.S.C. § 706*

COUNT FOUR: Abandonment and failing to enforce Immigration Law by the U.S. Executive Office and the President and the Governor's Office of South Carolina and Governor Nikki R. Haley.

COUNT FIVE: ESTABLISHMENT CLAUSE (separation of church and state prohibiting government from forcing religion)

COUNT SIX: RIGHT TO EQUAL PROTECTION UNDER THE LAW

COUNT SEVEN: "Take Care" Clause of SC Constitution

COUNT EIGHT: No Legislating by Executives

COUNT NINE: Violation of Privacy State and Federal

COUNT TEN: Federal Taking Clause

COUNT ELEVEN: State and Governor

COUNT TWELVE: The Declaration of Rights SC Constitution

COUNT THIRTEEN: Duty of Governor to give information to General Assembly

COUNT FOURTEEN: Equitable, Injunctive Writ of Mandamus and other relief to declare the State Plan and Other Directives Null and Void

ECF No. 46. In addition, Plaintiff filed a motion for a temporary restraining order, an injunction, and a writ of mandamus with various attachments in support. ECF No. 48.

On July 8, 2016, Defendant Hammond filed a motion to dismiss for failure to state a claim upon which relief could be granted. ECF No. 70. On July 15, 2016, State Defendants answered. ECF No. 74. On July 18, 2016, Relief Services filed a motion to

Social Services; Dorothy Addison, Director for Refugee Resettlement Plan; Curtis M. Loftis, Jr., State Treasurer for South Carolina State Treasurer; Mark Keel, Chief for South Carolina Law Enforcement Division (SLED); Colonel Michael Oliver, Commander for South Carolina Highway Patrol (SCHP); Leroy Smith, Director for South Carolina Department of Public Safety; Catherine Heigel, Director for South Carolina Department of Health [and] Environmental Control (SCDHEC); and Richard Eckstrom, Comptroller for South Carolina Office of Comptroller General (collectively "State Defendants").

4. All Name Variations as filed United States of America; Barack Hussein Obama, President and Chief Executive Officer for Executive Office of the United States of America; Jeh Johnson, Secretary for U.S. Department of Homeland Security and its subordinate agencies; Gil Kerlikowske (replaced by Sarah Saldana), Commissioner for U.S. Department of Customs and Border Protection and its subordinate agencies; Leon Rodriguez, Director for U.S. Citizenship and Immigration Services and its subordinate agencies; Ronald D. Vitiello, Deputy Chief for Border Patrol U.S. Department of Customs and Border Protection and its subordinate agencies; Thomas S. Winkowski, Acting Director for U.S. Department of Immigration and Customs Enforcement and its subordinate agencies; Loretta Lynch, Attorney General for U.S. Department of Justice and its subordinate agencies; Anne C. Richard Assistant Secretary of State for Population, Refugees, and Migration and its subordinate agencies; and Jacob J. Lew for U.S. Department of Treasury and its subordinate agencies (collectively "Federal Defendants").

dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. ECF No. 75. On July 19, 2016, Defendant Spearman filed a motion to dismiss for failure to state a claim upon which relief could be granted. ECF No. 76. On August 4, 2016, State Defendants filed a motion for summary judgment for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.[5] ECF No. 79. On September 12, 2016, Federal Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.[6] ECF No. 105. Plaintiff responded in opposition to each of these motions with additional documents attached. ECF Nos. 78, 80–82, 84–87, 101, 103, 104, 107–111. Defendant Spearman, State Defendants, and Federal Defendants filed replies. ECF Nos. 90, 102, 113. On October 17, 2016, a hearing on all motions was held before this Court. ECF No. 119. At the conclusion of the hearing, this Court stated its intended ruling to grant Defendants' motions to dismiss with and without prejudice.[7] In addition, Plaintiff was provided forty-five days to submit a proposed third amended complaint for the Court's review to determine if it would be futile against certain defendants. The Court takes this opportunity to clarify its ruling and issue a written order.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The court must

---

5. At the hearing, the Court suggested converting State Defendants' motion for summary judgment to a motion to dismiss and granting it with prejudice as to some State Defendants and without to others. *See* ECF No. 122; Hrg. Trans. 64:3–8. Counsel for State Defendants was agreeable to same and the affidavit or letter submitted with their motion was not considered by the Court in evaluating Plaintiff's second amended complaint. *See* ECF No. 79–2, 79–3.

6. On August 23, 2016, Plaintiff provided a summons returned executed for Federal Defendants. ECF No. 99. Thus, Federal Defendants' motion was timely filed.

7. At the hearing on October 17, 2016, the Court inquired as to the service of Ambassador Daniel V. Speckhard, President and CEO for Lutheran World Relief, because a response had not been received from this defendant. Plaintiff's attorney represented that Defendant Speckhard had been served and assured the Court that proof of service would be provided evidencing same. On October 19, 2016, Plaintiff submitted a copy of a domestic return receipt addressed to: "Dan Speckhard, Tim Breene, World Relief at 7 E. Baltimore Street, Baltimore, MD 21201." ECF No. 120–1. This proof of service is devoid for more than just its lack of signature, but Defendant Speckhard is not available at the address provided on the receipt. Defendant Speckhard is associated with Lutheran World Relief, Inc.—a separate entity from World Relief as represented by Relief Services at the hearing—with a different registered agent available at 700 Light Street in Baltimore, Maryland. *See* http://www.sos.sc.gov/index. asp?n=46&p=0&s=46&char_id=1217.
Therefore, Defendant Speckhard has not been properly served, and this case against him and Lutheran World Relief is dismissed without prejudice.

determine whether the factual allegations in a complaint state a plausible claim for relief based on "judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. In addition, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

█ Federal courts are courts of limited jurisdiction and, as such, may only hear and decide cases when given the authority to do so by the United States Constitution and by federal statute. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).

█ In a motion to dismiss pursuant to Rule 12(b)(1), the burden rests with the plaintiff to prove that federal subject-matter jurisdiction is proper. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *see Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

█ "Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure." *Lovern*, 190 F.3d at 654. The "district court may address its lack of subject matter jurisdiction in two ways." *Id.* It

"may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)," or, "after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." *Id.* (internal citations omitted); *see Adams*, 697 F.2d at 1219 (same).

█ "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

### C. Leave to Amend Complaint

██ "Under Rule 15 of the Federal Rules of Civil Procedure, a 'court should freely give leave [to amend] when justice so requires.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting Fed. R. Civ. P. 15(a)(2)). However, "a district court's denial of leave to amend is appropriate when (1) the amendment would be prejudicial to the opposing party; (2) there has been bad faith on the part of the moving party; or (3) the amendment would have been futile." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (internal quotation marks omitted). Amendment may be futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *Kellogg Brown & Root, Inc.*, 525 F.3d at 376 (quoting *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007)). In addition, "[r]egardless of the merits of the desired amendment, a district court does not abuse its discretion 'by declining

to grant a motion that was never properly made.'" *Drager*, 741 F.3d at 474–75 (quoting *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–631 (4th Cir. 2008)).

## III. DISCUSSION

Since the founding of this nation, Congress has been vested with the power to create a uniform rule of naturalization. *See* U.S. Const., art. I, § 8. In 1952, Congress passed the Immigration and Nationality Act ("INA"), which served to collect and codify the various provisions of immigration law in one location. *See* 8 U.S.C. §§ 1101, *et seq.* There have been subsequent amendments to the INA, to include the Refugee Act of 1980 ("Refugee Act") with its stated objective as providing "a permanent and systematic procedure for the admission to this country of refugees" and "comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." Pub. L. 96–212, 94 Stat. 102 (1980).

Congress has authorized appropriations to provide refugees with assistance upon their arrival in America and the resources necessary to achieve economic self-sufficiency. *See* 8 U.S.C. §§ 1521 *et seq.* The Office of Refugee Resettlement (the "O.R.R."), established under the Department of Health and Human Services, is responsible for overseeing and administering this program. *Id.* The Refugee Act authorizes a collaboration of the federal government, the states, and local resettlement agencies to achieve successful resettlement of refugees; however, the federal government need only consult with others. *Id.*

If a state would like to participate and receive funds directly from the federal government, the state is required to submit a plan describing "how the State intends to encourage effective refugee resettlement," and "how the State will insure that language training and employment services are made available to refugees receiving cash assistance." 8 U.S.C. § 1522(a)(6).[8] In addition, among other things, the state must designate "an individual, employed by the State, who will be responsible for insuring coordination of public and private resources in refugee resettlement." *Id.* South Carolina, through Governor Haley, has elected to participate in this program and submitted the "State of South Carolina Refugee Resettlement Program—State Plan FY 2016" ("State Plan"), which is the subject of this lawsuit.[9] ECF No. 55.

In addition, the federal government may "make grants to, and contracts with, public or private nonprofit agencies for initial resettlement . . . of refugees in the United States." 8 U.S.C. § 1522(b)(1)(A). The local resettlement agencies in South Carolina are Lutheran Services Carolinas and World Relief Spartanburg, named as parties to this litigation. ECF No. 55 at 6.

### A. Hammond's Motion to Dismiss for Failure to State a Claim (ECF No. 70)

Defendant Hammond made a motion to dismiss this case against him due to Plaintiff's failure to state a claim upon which relief could be granted. ECF No. 70. Hammond argues he is only named in the caption and not mentioned in the body of the second amended complaint. *Id.*

---

**8.** "Assistance and services funded under this section shall be provided to refugees without regard to race, religion, nationality, sex, or political opinion." 8 U.S.C. § 1522(a)(5).

**9.** The South Carolina Department of Social Services is designated as the state agency responsible for the development and administration of the State Plan, and Dorothy Addison is appointed as the state refugee coordinator in the State Plan. ECF No. 55 at 4, 6.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). At the hearing, Plaintiff was unable to refute that there were no specific allegations against Hammond in his second amended complaint. Plaintiff's closest allegation against Hammond is found in Paragraph 131 of the second amended complaint which relates to the "Great Seal of South Carolina" being affixed to the State Plan. ECF No. 46 at 34–35.[10]

Because Plaintiff has failed to make any specific allegations against Hammond in his second amended complaint, he has failed to state a claim upon which relief can be granted. Furthermore, at the hearing, Plaintiff conceded that Hammond was not needed to obtain his requested relief. ECF No. 122; Hrg. Trans. 9:5–19. Therefore, Hammond's motion to dismiss for failure to state a claim is granted and this case against him is dismissed with prejudice.[11]

### B. Spearman's Motion to Dismiss for Failure to State a Claim (ECF No. 76)

Defendant Spearman made a motion to dismiss this case against her due to Plaintiff's failure to state a claim upon which relief could be granted. ECF No. 76. Spearman argues, similar to Defendant Hammond, that she is named in the caption of the second amended complaint; however, she is not otherwise mentioned in the body of the second amended complaint. *Id.* at 1. In addition, Spearman contends the Department of Education is only specifically mentioned once.[12] *Id.* at 1. Thus, no specific allegation of wrong doing has been made against Spearman, and she argues this case should be dismissed with prejudice. *Id.* at 2, 4.

Plaintiff claims that the words "Public Education" are "used over and over in almost every allegation." ECF No. 84 at 5. Plaintiff asserts in the last sentence of his response that "THIS DEFENDANT IS A NECESSARY PARTY" without further support. *Id.* at 8.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic Corp.*, 550 U.S. at 570, 127 S.Ct. 1955). The words "public education" are only used three times throughout the forty-six page second amended complaint, and Plaintiff does not allege sufficient

10. "Upon information and belief, the Seal on the State Plan has not been sealed with The Great Seal and counter signed with the Secretary of State (the State Plan 2016 does not appear to have The Great State seal of South Carolina. The State Plan cannot be simply 'rubber stamped' ... All of these sections have been violated causing Plaintiff harm and damage and imminent harm and damage to his person and property."

11. In addition, Plaintiff's previous request for leave to amend the second amended complaint against Hammond is denied as Plaintiff did not submit a proposed amended complaint with his request, and, therefore, it was not properly made. *See Drager*, 741 F.3d at 474–75. In addition, amendment would be futile as conceded by Plaintiff at the hearing. *Id.* at 474.

12. "The failure of SCDSS, SLED, SCHP, SCDHEC, SC Treasurer Office, Comptroller General and the Department of Education and all of the agents, employee to review, investigate and faithfully execute the law has caused Plaintiff damages and imminent harm." ECF No. 46 at ¶ 63.

facts to state a plausible claim.[13] ECF No. 46 at ¶¶ 2, 3, 40. In addition, the State Plan's only mention of public education is in reference to resettlement agencies being "responsible for providing refugees with resettlement assistance ... include[ing] referral services, e.g., health, employment, and education," ECF No. 55 at 32, and adult education is mentioned elsewhere, *id.* at 25. Spearman or the Department of Education are not mentioned in the State Plan, and, thus, are not necessary parties to this action. ECF No. 55.

Because Plaintiff has failed to allege a claim in his second amended complaint against Spearman or the South Carolina Department of Education, he has failed to state a claim upon which relief can be granted and this case against Spearman is dismissed with prejudice.

## C. Relief Services' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 75)

Defendant Relief Services made a joint motion to dismiss Plaintiff's second amended complaint and asserted two key arguments: (i) Plaintiff lacks standing to assert any of his putative claims against them; and (ii) Plaintiff has failed to state a claim upon which relief can be granted against them. ECF No. 75. Even if Plaintiff were to have standing against Relief Services to assert a claim, Plaintiff has failed to state sufficient allegations or a claim upon which relief can be granted. Therefore, the Court will address only the latter argument.

Relief Services argues that even if Plaintiff had standing, his second amended complaint should be dismissed for failure to comply with Rules 8 and 10. ECF No. 75 at 13. Relief Services points to the multiple locations in Plaintiff's second amended complaint that contain incomplete sentences[14] and "sweeping conclusions and arguments masquerading as factual allegations." *Id.* at 15.

Regardless of whether Plaintiff had standing and complied with basic pleading requirements, he has failed to allege that Relief Services—private non-governmental entities—can be sued under the causes of action asserted because Plaintiff has not pled sufficient facts showing that Relief Services are government officials or entities as required under his causes of action. Plaintiff has only alleged that Relief Services "receives substantial funds from USA and South Carolina in contractual agreements with SCDSS and through other vendors in the very lucrative business of refugee resettlement," have an "intimate relationship" with the government, and "[f]ederal funds are also provided to states with approved state plans to pass through to local resettlement agencies such as ... [Relief Services]." ECF No. 46 at ¶¶ 11, 13–14, 108, 175. However, the United States Supreme Court has held acts of private contractors "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker v. Kohn,* 457 U.S. 830, 841, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Therefore, Plaintiff must plead more than Relief Services entered into a contract with the government or conclusory allegations to show they are government entities.

## 1. Counts One through Four and Six through Thirteen are Dismissed

■ Plaintiff fails to allege how the federal or state constitutions apply to Relief

---

13. Spearman is only mentioned in Paragraph 10, which states, "Defendant Molly Spearman South Carolina Department of Education http://ed.sc.gov." ECF No. 46 at ¶ 10.

14. ECF No. 46, ¶¶ 5–10, 136–40, 155–57, 164–65.

Services or how Relief Services owed a duty and failed to enforce the laws under the relevant causes of action alleged in his second amended complaint. With regard to Counts One, Four, and Six through Thirteen, Relief Services is not the President, the Governor, or other government officials charged with enforcing the law nor has Plaintiff pled sufficient facts to show how these causes of action apply to Relief Services.[15] Regarding Counts Two and Three, Plaintiff has not pled sufficient facts to show Relief Services are agencies covered by the Administrative Procedures Act ("APA").[16] Specifically, Plaintiff has failed to allege how Relief Services are federal agencies subject to the APA. *See Ritter v. Cecil Cty. Office of Hous. & Cmty. Dev.*, 33 F.3d 323, 327 (4th Cir. 1994) (stating the entity at issue was "neither created nor maintained or controlled by the United States" so judicial review under the APA was not available).

In fact, Counts One through Four and Six through Thirteen fail to even mention Relief Services. Therefore, Counts One through Four and Six through Thirteen are dismissed due to Plaintiff's failure to state a claim against Relief Services.

### 2. Count Five is Dismissed

Plaintiff only specifically alleges a cause of action against Relief Services in Count Five—an alleged violation of the Establishment Clause or Free Exercise Clause by stating the "Government through the intimate relationships with the various non-profit 'religious charities' clearly violates the Plaintiff's state and federal rights" and "[t]his cause of action goes to the NonProfit Defendants that are violating the separation of Church and State" due to Relief Services citation of "various scripture verses in their defense" and the government "must not direct the actions of the 'religious corporations' and non-profits by mandating that they not proselytize." ECF No. 46 at ¶¶ 108–109. In addition, Plaintiff alleged, that "anyone involved in this program is not to 'proselytize' " and so "this language IS CONTRARY to a legally protected interest that he has to freely share and practice his Christian Religion." *Id.* at ¶¶ 73–74.

■ First, Relief Services does not mention one scripture verse in their responsive pleading. Second, Plaintiff misunderstands the mandate not to proselytize in the cooperative agreements between the government and Relief Services. It is not a mandate that restricts Plaintiff's right to share his religion; it only prohibits Relief Services, or by extension its volunteers, from proselytizing to refugees while using federal funds to ensure there is not advancement of religion by the government.[17]

15. These counts are:
COUNT ONE__ Violation of The Take Care Clause, Art. II, § 3, Cl. 5
COUNT FOUR: Abandonment and failing to enforce Immigration Law by the U.S. Executive Office and the President and the Governor's Office of South Carolina and Governor Nikki R. Haley.
COUNT SIX: RIGHT TO EQUAL PROTECTION UNDER THE LAW
COUNT SEVEN: "Take Care" Clause of SC Constitution
COUNT EIGHT: No Legislating by Executives
COUNT NINE: Violation of Privacy State and Federal

COUNT TEN: Federal Taking Clause
COUNT ELEVEN: State and Governor
COUNT TWELVE: The Declaration of Rights SC Constitution
COUNT THIRTEEN: Duty of Governor to give information to General Assembly

16. These counts are:
COUNT TWO: Violation of the APA, 5 U.S.C. § 553
COUNT THREE: Violation of the APA, 5 U.S.C. § 706

17. *See* "The Reception and Placement Program of the United States Dep't. of State" at http://www.state.gov/j/prm/ra/reception

Furthermore, as private actors, Relief Services do not violate the Establishment Clause or Free Exercise Clause. Finally, as discussed in more detail below, Plaintiff has failed to allege a violation of these clauses by any defendant.

Therefore, Plaintiff has failed to allege a violation of the Establishment Clause or Free Exercise Clause by Relief Services and Count Five is dismissed against them.

### 3. Count Fourteen is Dismissed

Relief Services argues that nothing in Count Fourteen ("Equitable, Injunctive Writ of Mandamus and other relief to declare the State Plan and Other Directives Null and Void"), asserted under 28 U.S.C. §§ 2201–2202 and Rules 57, 65, and 66 of the Federal Rules of Procedure, provides a basis for Plaintiff's sought relief.

 Pursuant to Rule 81(b), the writ of mandamus has been abolished. Fed. R. Civ. P. 81(b). The "[r]elief previously available through [this writ] may be obtained by appropriate action or motion under these rules." *Id.* Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). The requirements for mandamus relief are: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). The Declaratory Judgment Act does not convey jurisdiction without a viable cause of action. *See* 28 U.S.C. §§ 2201, 2202; *see also Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (stating "the Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right").

As discussed above, Plaintiff has not alleged sufficient facts to suggest Relief Services are officers, employees, or agencies of the United States owing a duty to Plaintiff. In addition, Plaintiff has not alleged sufficient facts to show a cause of action against Relief Services. Therefore, Count Fourteen is dismissed against Relief Services.

### 4. Plaintiff's Request for Leave to Amend is Denied

To the extent Plaintiff would request leave to amend his second amended complaint, Relief Services have already been subjected to responding to Plaintiff's complaints on three occasions. ECF Nos. 1, 10, 11, 33, 35, 75.

Plaintiff is represented by counsel and has already amended his complaint twice; however, the second amended complaint is poorly written—even . containing incomplete or incorrect citations. Leave to file a third amended complaint, "in light of the confusing nature of the [second amended complaint], even with the aid of counsel and additional attempts at amending, would serve only to further drain the time and resources of Defendants and of this [C]ourt." *Holt v. Stroman*, No. 3:12-cv-03539-JMC, 2015 WL 1061990, at *4 (D.S.C. Mar. 11, 2015), *aff'd*, 648 Fed. Appx. 367 (4th Cir. 2016).

placement/index.htm ("The Department of State has cooperative agreements with nine domestic resettlement agencies to resettle refugees. While some of the agencies have religious affiliations, they are not allowed to proselytize."); *see also* ECF No. 53, Hrg. Trans. 35:9–11.

Therefore, Plaintiff's request for leave to amend his complaint against Relief Services is denied.

### 5. Summary

Even viewing the factual allegations in the light most favorable to Plaintiff, he has failed to make sufficient allegations or state a claim upon which relief can be granted against Relief Services as the Court does not accept his legal conclusions, unwarranted references, or unreasonable arguments as true. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009). In addition, more often than not, Plaintiff failed to even mention Relief Services within his claims. Thus, Relief Services' motion to dismiss for Plaintiff's failure to state a claim against them is granted and this action is dismissed with prejudice.

### D. State Defendants' Motion to Dismiss for Lack of Standing or Failure to State a Claim (ECF No. 79)

State Defendants made a motion for summary judgment against Plaintiff because they assert Plaintiff lacks standing to bring a claim, and Plaintiff has failed to state a claim upon which relief can be granted. ECF No. 79 at 2. Even if Plaintiff were to have standing to bring this claim against State Defendants, he has failed to allege sufficient facts or state a claim upon which relief can be granted.[18]

18. It is questionable whether Plaintiff would have standing to bring this suit against State Defendants because Plaintiff may not allege an injury in fact fairly traceable to State Defendants that would be redressed by a favorable decision against them—even if an injunction were to be issued preventing State Defendants from implementing the State Plan, Federal Defendants do not require them to implement the refugee resettlement effort. *See Lujan v. Defenders of Wildlife*, 504 U.S.

With regard to the overall allegations against State Defendants, Plaintiff alleges failure to vet or keep record of refugees; the State Plan is unconstitutional and Governor Haley had no authority to enter into it because she was required to present the State Plan to the General Assembly; Governor Haley and state agencies are not enforcing the laws and are acting unconstitutionally; no "meaningful projections" were done as to the impact of refugee resettlement, which causes him harm; SCDSS's agreements with Relief Services mandate they do not proselytize, which violates his rights under the First Amendment; the State Plan will overburden the community, causing him harm; use of unlimited interpreters is contrary to immigration law because it does not promote self-sufficiency; and SCDSS has no authority to implement the State Plan.[19] As a result of these alleged violations, Plaintiff requests a declaration that his rights have been violated, a temporary restraining order, preliminary and permanent injunction of the refugee resettlement plan in South Carolina, and full discovery with accounting.[20]

### 1. Counts One through Three and Ten are Dismissed

Counts One through Three and Ten in the second amended complaint are federal claims and, thus, inapplicable to State Defendants. Therefore, these counts are dismissed against State Defendants.[21]

555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also* 8 U.S.C. §§ 1521 *et seq.*

19. *See, e.g.*, ECF No. 46 at ¶¶ 27, 41, 53–54, 60–61, 63–64, 67–71, 71, 73, 75–77, 84, 123–144, 146, 154–169.

20. ECF No. 46 at 39–41, 44–45.

21. These counts are: "Count One: Violation of The Take Care Clause, Art. II, § 3, Cl. 5"; "Count Two: Violation of the APA, 5 U.S.C. § 553"; "Count Three: Violation of the APA,

## 2. Count Four is Dismissed

State Defendants assert that Count Four, regarding the abandonment and failure to enforce immigration law by Governor Haley, "does not refer to a single provision of substantive law which Plaintiff claims to have been violated," and, furthermore, in the one paragraph devoted to Count Four, Plaintiff only mentioned Governor Haley—no other State Defendants were mentioned. ECF Nos. 79–1 at 12; 46 at ¶ 104.

Under 45 C.F.R. § 400.7, "A plan or plan amendment under title IV of the Act must be submitted to the State Governor or his or her designee, for review, comment, and signature before the plan is submitted to ORR." In his second amended complaint and response, Plaintiff failed to point to any immigration law requiring Governor Haley to act as she has otherwise done. ECF Nos. 46, 101.

Thus, the State Plan was properly submitted to and approved by Governor Haley, and Plaintiff has failed to allege sufficient facts to state a plausible claim otherwise. Therefore, this count is dismissed against State Defendants.

## 3. Count Five is Dismissed

 With regard to Count Five regarding violation of the Establishment Clause, State Defendants correctly state no specific allegation is made against State Defendants in this count.[22] ECF No. 46. In addition, as discussed *infra*, Plaintiff fails to show how his rights under the First Amendment have been injured by any defendant due to his lack of involvement in Relief Services or the mandate imposed upon Relief Services not to proselytize while using government funds.[23] Therefore, this count is dismissed against State Defendants.

## 4. Count Six is Dismissed

With regard to Count Six (Plaintiff's right to equal protection under the law), Plaintiff has not alleged anything more than naked assertions as to how his rights to privacy, freedom of speech, and freedom of religion were violated by State Defendants.[24] ECF No. 46. This Court does not need to accept Plaintiff's legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments as true. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009). Without more, Plaintiff's claim that his right to

5 U.S.C. § 706"; and "Count Ten: Federal Taking Clause."

**22.** The filed second amended complaint states, "The [Federal] Government through the intimate relationships with the various non-profit 'religious charities' clearly violates the Plaintiff's state and federal rights" and "[t]his cause of action goes to the Non–Profit Defendants that are violating the separation of Church and State" ECF No. 46, ¶¶ 108–09. Despite Plaintiff's attempt, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013).

**23.** Furthermore, although Plaintiff made additional allegations in his proposed third amended complaint with regard to State Defendants and the First Amendment, Plaintiff still failed to state a sufficient claim against State Defendants to show they violated his rights under the First Amendment.

**24.** ECF No. 46 at ¶¶ 110–12 (stating the South Carolina Constitution provides for equal protection of the laws and "these directives are in direct violation of a very private right he has" as well as "[t]he Freedom of Speech, Freedom of Religion The right to Privacy Rights against unreasonable search and seizure. The Plaintiff is informed and believes his rights have been violated by this [State Plan] and the directives circumventing due process").

equal protection has been violated fails. Therefore, Count Six is dismissed.

### 5. Counts Seven and Eight are Dismissed

With regard to Count Seven (violation of the "'Take Care' Clause of SC Constitution"), Plaintiff does not identify any law requiring Governor Haley to involve the legislature with the State Plan, which is created via federal law as discussed above. *See* ECF No. 46. With regard to Count Eight ("No legislating by Executives"), Plaintiff failed to allege factual allegations under this count aside from reincorporating the previous 115 paragraphs. *See* ECF No. 46 at ¶¶ 116–18.

In response to State Defendants' assertion that Plaintiff has not identified "and the Defendants' counsel is unaware of any requirement that the legislature has a role in the execution of the State Plan," Plaintiff provides only that it "absolutely violates the South Carolina Constitution, particularly pertaining to the Executive branch and cites referenced in the [Second] Amended Complaint as to the State Constitution." ECF No. 101 at 7–8 (¶¶ 9–10).

▆▆ At most, in his prior affidavit, Plaintiff cites to the 2016–2017 Appropriations Act ("State Budget") Proviso 117.32 to support that "a county must affirmatively opt-in if it is going to be a 'refugee' 'Islamic' Friendly County." ECF No. 1–1 at 40. However, the correct citation is to Proviso 117.123, and states in full, "(GP: Refugee Resettlement Program) No state funds shall be expended to assist in the United States Refugee Resettlement Program unless the county council of the county where the resettlement is to occur approves the relocation." S.C. State Budget, Proviso 117.123. Furthermore, as supported by the State Plan and 45 C.F.R. § 400.202, the Refugee Resettlement Program is one hundred percent federally

funded. ECF No. 55; 45 C.F.R. § 400.202. Thus, State Defendants are in compliance with the State Budget. Again, Plaintiff fails to provide any substance or clarification for his argument. Therefore, Counts Seven and Eight are dismissed.

### 6. Count Nine is Dismissed

With regard to Count Nine ("Violation of Privacy State and Federal"), State Defendants correctly assert that the entire count states, "Re-allege all paragraphs 1–118 as they relate to each agency both Federal and state and how at the directives of the executives and DHS and there ORR have violated Federal, State Law and Judge Hanen's rulings." ECF No. 79–1 at 15; ECF No. 46 at ¶ 119. Plaintiff must provide more to this Court than a single sentence to properly allege this count against State Defendants. In addition, review of the previous paragraphs does not support how State Defendants violated Plaintiff's privacy. Therefore, Count Nine is dismissed.

### 7. Count Eleven is Dismissed

With regard to Count Eleven ("State and Governor"), Plaintiff does not allege how Governor Haley has failed to follow the South Carolina Constitution in creating the State Plan. ECF No. 46 at ¶¶ 123–44. The articles and sections of the South Carolina Constitution referenced by Plaintiff are intermingled with incomplete sentences and do not support that Governor Haley, or State Defendants in general, have violated the South Carolina Constitution. For example, in Paragraph 141, Plaintiff states: *"S.C. Constitution Article 17 section 15* doesn't give any right for Government to do what they did in this case." ECF No. 46 at ¶ 141. However, this section is completely irrelevant to Plaintiff's argument as it is regarding domestic unions recognized in South Carolina and,

furthermore, is now unconstitutional due to the Supreme Court's recent decision in *Obergefell v. Hodges,* —— U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). *See* S.C. Constitution, Art. 17, § 15.

Therefore, Plaintiff has failed to allege a claim against Governor Haley, or any State Defendant, with regard to Count Eleven and it is dismissed.

## 8. Counts Twelve and Thirteen are Dismissed

With regard to Counts Twelve ("The Declaration of Rights SC Constitution") and Thirteen ("Duty of Governor to give information to General Assembly"), Plaintiff's second amended complaint contains only conclusory allegations and citations to legal provisions without factual explanation of their applicability. ECF No. 46 at ¶¶ 145–69. Throughout these counts, Plaintiff cites the same S.C. Constitution provisions—presuming Plaintiff meant to do so because he provides incomplete citations and most provisions cited are nonexistent in the U.S. Constitution. In addition, the poor drafting of the amended complaint is exemplified in, for example, Paragraph 148 wherein the entire paragraph states: "Article 3 Section 34 was violated;". In other paragraphs, Plaintiff made statements without citing any authority or forming a complete sentence as exhibited by Paragraph 162: "Special election for bonding municipality General Assembly holding a Petition of a Majority of the Freeholders (this would be for refugee resettlement) duly qualified for voting and paid taxes—in and election to issue such bonds; This was not done properly;". ECF No. 46 at ¶ 162. These paragraphs are insufficient to constitute causes of action or state a claim.

Therefore, Counts Twelve and Thirteen are dismissed.

## 9. Count Fourteen is Dismissed

With regard to Count Fourteen ("Equitable, Injunctive Writ of Mandamus and other relief to declare the State Plan and Other Directives Null and Void"), this count does not raise a separate cause of action. ECF No. 46 at ¶¶ 170–76. Therefore, because the other counts are dismissed against State Defendants for failure to state a claim, this count is dismissed as well.

Plaintiff responded to State Defendants' assertion that he has failed to state a claim by stating the State Defendants should have filed a "Cross–Claim" against Federal Defendants instead. ECF No. 101 at 10. In addition, Plaintiff simply states he has "adequately pled the authority, duty, harm, damage, and other causes of action." ECF No. 101 at 12. Furthermore, Plaintiff filled pages 13 through 18 of his response by merely inserting Paragraphs 85 through 93 (portions of Count One), Paragraph 104 (Count Four), and Paragraphs 105 through 109 (Count Five) from his amended complaint with small phrases or sentences inserted within them. ECF No. 101 at 13–18. Finally, Plaintiff responded that "[t]he duty of the executive Branch and the subordinate agencies is to take care that the South Carolina laws are being faithfully executed in good faith under the Oath of Office each Defendant swore to uphold. The clear and convincing evidence set out in the exhibit referenced in the Amended Complaint of the Beaufort County Family Court Case concerning Missing child "W," demonstrates there is a huge problem with the laws being faithfully executed." ECF No. 101 at 18 (¶ 39). Plaintiff is attempting to connect the missing child in Beaufort, South Carolina, with State Defendants to show they are not faithfully executing the laws in South Carolina. The State Plan is not a law and, at the hearing, Plaintiff acknowledged that the child was

placed in South Carolina due to the actions of O.R.R. ECF No. 122; Hrg. Trans. 40:20–22. Furthermore, Plaintiff has not alleged sufficient factual allegations to show the relevancy or circumstances of the family court case in this action.

### 10. Summary

Therefore, Plaintiff has failed to state a claim against State Defendants in his second amended complaint. The Court grants State Defendants' motion to dismiss because, even if Plaintiff has standing, he has failed to state a claim upon which relief could be granted against State Defendants. Thus, this Court grants State Defendants' motion to dismiss against Governor Haley, Director of SCDSS Susan Alford, and Director of the Refugee Resettlement Plan Dorothy Addison without prejudice and against all other State Defendants with prejudice.[25]

### E. Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 105)

 Federal Defendants moved to dismiss this case against them due to Plaintiff's lack of standing and failure to state a claim upon which relief could be granted. ECF No. 105. Because the Court finds the former argument determinative due to Plaintiff's insufficient allegations, it will only address Federal Defendants' motion as to Plaintiff's lack of standing to bring this action.

With regard to overall factual allegations, Plaintiff alleged Federal Defendants have failed "to properly vet immigrants and refugees or to keep track of the same," ECF No. 46 at ¶ 27, unilaterally suspended or abandoned "the Nation's immigration laws," *id.* permitted improperly classified refugees who are potential criminals or terrorists to enter the country through the refugee resettlement program, *id.* at ¶¶ 70–71, 76–77, and violated the First Amendment by associating with private, religious resettlement agencies while prohibiting proselytization, *id.* at ¶ 73. As a result of these alleged actions, Plaintiff alleges imminent, irreparable injuries of an increased risk of terrorist activity, crime, contracting contagious diseases, and a decrease in the standard of living due to increased taxes or other impacts. *Id.* at ¶¶ 31, 65–66, 78, 83. Thus, Plaintiff alleges Federal Defendants committed six violations: Violation of the (1) Take Care Clause; (2) APA § 553 (notice and comment rulemaking); (3) APA § 706 (agency action not in accordance with law); (4) First Amendment; (5) Fourth Amendment (unreasonable search with right to privacy); and (6) the requirement to provide an immigrant's information under 8 U.S.C. § 1373.[26] *Id.* at ¶¶ 85–103, 105–09, 112, 119, 121–22, 147. As a result of these alleged violations, Plaintiff requests a declaration that his rights have been violated, a temporary restraining order, preliminary and permanent injunction of the refugee resettlement plan, and full discovery. *Id.* at 39–41, 44–45.

### 1. Arguments

Federal Defendants assert that Plaintiff lacks standing for two primary reasons: (i)

---

**25.** As discussed *infra,* the Court allowed Plaintiff to submit a proposed third amended complaint against Governor Haley, Director Alford, and Director Addison; however, after review of same, the Court deems amendment against these State Defendants would be futile.

**26.** To the extent Plaintiff reincorporated and re-alleged previous paragraphs within other causes of action, the claims related to violations of the constitution or laws of South Carolina, and, thus, were irrelevant to Federal Defendants or failed to specify how the allegation related to Federal Defendants.

Plaintiff fails to allege any concrete, particularized injury; and (ii) Plaintiff does not have standing as a taxpayer. ECF No. 105 at 2. Federal Defendants argue that Plaintiff only alleges a generalized challenge to the refugee resettlement program in South Carolina based on his belief that the process of admitting refugees and providing them with assistance violates the Constitution, laws, and Plaintiff's rights. *Id.* at 13. In addition, Federal Defendants contend Plaintiff has failed to allege a concrete and particularized injury as to himself or his family by only providing speculative harms such as "an increase in crime, contagious diseases, or deleterious effects on public spaces, water, food, and sanitation"—which would not affect him to any greater extent than another citizen.[27] *Id.* at 14.

Plaintiff responds that he has alleged harm faced in light of the terrorist attacks in America and cites the Affidavit of Michael Cutler and statements by James Comey, Director of the F.B.I., regarding no "ripple in the pond" to help locate terrorists in support of his contention that his safety is in danger. ECF No. 107 at 15–16, 18–19. In addition, Plaintiff responds that he will not be able to live in a safe and secure environment that is free from contagious diseases if the laws are not enforced, citing the United States Code regarding inadmissible aliens and a power point presentation by Max Learner, Ph.D., Program Director for Emergency Management Columbia College. *Id.* at 17, 20;

ECF No. 50. Plaintiff also responds that the use of interpreters for the refugees is against the INA because it does not promote "self-reliance" and the State Plan will overburden local resources. *Id.* at 17–20.

### 2. Standard

▮ "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," in Article III, which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Spokeo, Inc. v. Robins,* —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (internal citations omitted).

▮ There are three elements required to fulfill the "constitutional minimum" of standing: The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff has the burden of establishing these elements, and, at the pleading stage, must "clearly ... allege facts demonstrating" each element. *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

---

**27.** Federal Defendants reserved their right to challenge the truthfulness of Plaintiff's jurisdictional allegations if they are called into question. The Fourth Circuit has explained: [W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint; conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, *unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous.*
*Kerns v. United States,* 585 F.3d 187, 193 (4th Cir. 2009) (emphasis added).

### 3. Analysis

#### i. Plaintiff Lacks Article III Standing

Plaintiff alleges that "he has or is in imminent danger of sustaining an invasion of his legally protected fundamental rights . . . such as, his right to privacy, his right to be safe and secure in his home, in his person and in his community," ECF No. 46, ¶ 64, or "his standard of living and that of his family's has been and soon will be affected," *id.* at ¶ 65. Plaintiff primarily relies upon three cases to support he has standing in this case: *Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015) *aff'd by equally divided court*, — U.S. —, 136 S.Ct. 2271, 195 L.Ed.2d 638 (2016); *Exodus Refugee Immigration, Inc. v. Pence*, 165 F.Supp.3d 718 (S.D. Ind. 2016), *aff'd*, 838 F.3d 902 (7th Cir. 2016); and *United States v. Nava–Martinez*, No. B-13-441-1, 2013 WL 8844097 (S.D. Tex. Dec. 13, 2013). However, each case is distinguishable and does not support Plaintiff's position.

In *Texas*, the issue centered on President Obama's executive order creating the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") and expanding the Deferred Action for Childhood Arrivals ("DACA"), which essentially gave the Department of Homeland Security ("DHS") authority to defer deporting illegal immigrants for three years if they met certain criteria. 86 F.Supp.3d 591. The Fifth Circuit affirmed

that Texas had standing due to the financial injury it would suffer by having to issue drivers' licenses to the illegal immigrants because the states were entitled to "special solicitude" as discussed in *Massachusetts v. EPA*, 549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007).[28] *Texas v. United States*, 809 F.3d 134, 151–55 (5th Cir. 2015). Specifically, the Fifth Circuit stated, "the states are within the zone of interests of the Immigration and Nationality Act ("INA"); *they are not asking us to 'entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws.'*" *Id.* at 152. (emphasis added).

 Therefore, *Texas* is distinguishable from the case at hand for the following reasons: (1) *Texas* involved presidential executive action—DACA and DAPA—whereas this case involves congressional action—INA and the Refugee Act allowing the State Plan to go into effect, and (2) the plaintiffs in *Texas* were states whereas here the plaintiff is a citizen. Therefore, although Plaintiff has attempted to plead violations by mentioning DACA and DAPA as well as use this case as persuasive authority to support he has standing, DACA and DAPA are inapplicable because they do not relate to refugee resettlement—Plaintiff's complaint—and the Fifth Circuit specifically stated they were not considering a citizen suit, which this case is.[29] Thus, there is no conflicting position

---

28. Although the district court found standing under an alternative theory—abdication standing, which is a theory that the state has "standing because the United States has exclusive authority over immigration but has refused to act in that area," the Fifth Circuit only affirmed standing under the financial injury due to drivers' licenses being issued. *Texas*, 809 F.3d at 149–50.

29. In addition, neither 8 U.S.C. § 1157 (INA—Annual admission of refugees and admission of emergency situation refugees) or

§ 1522 (Refugee Act—Authorization for programs for domestic resettlement of and assistance to refugees) allow an individual plaintiff, who is not a refugee or relative, to challenge determinations regarding admission and resettlement of refugees. Furthermore, neither Act creates a private cause of action for Plaintiff—explicitly or implicitly. There is not an expressly created private cause of action for those who are not refugees or relatives thereof in the Acts, and Plaintiff does not fit these categories. With

by South Carolina with the Federal Defendants nor is there a violation of a "directive" as asserted by Plaintiff.[30]

Second, Plaintiff relies on *Exodus Refugee Immigration, Inc.*; however, that case is merely persuasive authority and distinguishable. In that case, the court agreed with a refugee resettlement agency that it had Article III standing because the agency would "be economically harmed by the State's decision to withhold federal funds ... for social services it provides to its Syrian clients" and "[t]he loss of funds for social services [the agency] provides its Syrian refugee clients, and will provide in the near future, is an injury to [it] that is 'imminent' rather than 'speculative.'" *Exodus*, 165 F.Supp.3d at 730. Plaintiff's situation is not analogous as he is trying to prevent refugees from resettling, not assist them. Plaintiff's assertion that he has met the "minimum requirements" is inaccurate, and his statement that "[t]he specific loss to [him] can be seen in the violation of Public Education Funds ... as well as other Public services" does not show a concrete, particularized, and actual or imminent injury. ECF No. 107 at 12–13.

The third case Plaintiff relies upon is *Nava–Martinez*. However, this case is merely persuasive authority and inapplica-ble as that case was regarding the trafficking of a young girl into the United States and, when the smuggler was apprehended, the child was delivered by DHS to her mother—an illegal immigrant—which the district court claimed was a federal agency's action violating the law. *Nava–Martinez*, No. B-13-441-1, 2013 WL 8844097 (S.D. Tex. Dec. 13, 2013). Here, the State Plan is regarding refugees—who have undergone the vetting process to legally enter the United States—being resettled in South Carolina. Thus, *Nava–Martinez* is readily distinguishable from the case at hand.

Furthermore, Plaintiff has failed to show particularity—how the alleged harm affects him in a "personal and individual way"—and concreteness—the alleged injury actually exists or is imminent by way of his second amended complaint. For example, Plaintiff failed to plausibly allege injury that he would be subjected to heightened state taxes because he fails to recognize the state is reimbursed with federal funds for costs associated with resettled refugees as stated in the State Plan, which is discussed in Plaintiff's second amended complaint and attached as support. ECF No. 55 at 5; *see S. Walk at*

regard to an implicit private cause of action, the Supreme Court has suggested factors to consider such as (1) if the plaintiff is part of the class for whose benefit the statute was enacted; (2) if legislative intent indicates creation of a remedy; (3) if it is in alignment with the underlying purpose of the statute; and (4) if it is a cause of action traditionally relegated to state law. *Former Special Project Employees Ass'n v. City of Norfolk*, 909 F.2d 89, 91 (4th Cir. 1990). The crux is whether Congress intended to create a private cause of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Here, Plaintiff is a private citizen, not a refugee or relative, so he does not appear to be in the necessary class. Under 8 U.S.C. § 1522(a)(1)(B), it states, "[i]t is the intent of Congress that in

providing refugee assistance under this section ..." and then discusses the focus on offering employment-related and transitional-related services. The objectives stated in the Refugee Act are, "to provide a permanent and systematic procedure for the admission to this country of refugees ... and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees...." Pub. L. 96–212, 94 Stat. 102 (1980). Thus, Plaintiff's request to halt the refugee resettlement program is not in alignment with the underlying purpose of the Acts. Therefore, Plaintiff does not have a private cause of action under the Acts.

**30.** ECF No. 101 at 7–9, 12 (¶¶ 8, 11–12, 21).

*Broadlands Homeowner's Ass'n v. Open-Band at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (stating the general rule that when there is a "conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] ... the exhibit prevails").

Plaintiff's claim that refugees pose a threat to public health and safety in South Carolina is unsupported by Plaintiff's citation to the Affidavit of Michael W. Cutler.[31] ECF No. 107 at 15. In addition, the presentation by Dr. Learner regarding contagious diseases does not refer to refugees once. ECF No. 50. Furthermore, refugees are required to be screened for medical risks prior to traveling to the United States. *See* 42 U.S.C. § 252; 8 U.S.C. § 1182(a)(1)(A); 8 U.S.C. § 1222; 45 C.F.R. § 400.5(f)). Finally, the use of interpreters is necessary to the process and authorized by 8 U.S.C. § 1522(e)(3) and the State Plan.

With regard to a plaintiff whose only interest was to vindicate the constitutional validity of a generally applicable state law, the United States Supreme Court recently stated:

> We have repeatedly held that such a "generalized grievance," no matter how sincere, is insufficient to confer standing. A litigant "raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at

large—does not state an Article III case or controversy."

*Hollingsworth v. Perry*, —— U.S. ——, 133 S.Ct. 2652, 2662, 186 L.Ed.2d 768 (2013) (quoting *Lujan*, 504 U.S. at 573–74, 112 S.Ct. 2130). Despite the numerous documents and pages submitted, Plaintiff has failed to show how he would be affected differently than the public by the speculative harms that he alleges and does not attempt to truly respond to this contention when given the opportunity. Therefore, his claims are only generalized grievances and do not confer standing.

### ii. Plaintiff Lacks Taxpayer Standing

Furthermore, Plaintiff does not have fit the "narrow exception to the general constitutional prohibition against taxpayer standing." *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 602, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007). Plaintiff attempts to allege a violation of his rights under the First Amendment by Federal Defendants—claiming that the funds paid to the religiously affiliated nonprofit resettlement organizations and the non-proselytizing mandate to the nonprofits violate the Establishment Clause and Free Exercise Clause.

▆▆▆ The United States Supreme Court has stated, "A taxpayer may or may not have the requisite personal stake in the outcome, depending upon the circumstances of the particular case. Therefore, we find no absolute bar in Article III to suits by federal taxpayers challenging allegedly unconstitutional federal taxing and spending programs." *Flast v. Cohen*, 392

---

**31.** For example, the Affidavit of Michael W. Cutler does not contain specific facts to support an issue exists in South Carolina. ECF No. 51. Furthermore, the Affidavit of Paul Sutliff discusses the "Irreparable Harm from Terrorist Infiltration," in essence stating that some terrorists pose as refugees to enter the country or the refugees' next generations

sometimes becomes terrorists. ECF No. 54 at 16–18. In addition, Sutliff provides a chart compiling an alleged list of terrorists who were classified as refugees or were the second generation of a refugee. *Id.* at 27–31. However, none of these supposed terrorists were in South Carolina. Lastly, the information cites news articles as the sources.

U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). However, *Flast* constituted a narrow exception allowing taxpayer standing for a plaintiff to challenge congressional action authorizing the use of federal funds in a way that allegedly violates the First Amendment. *See Hein*, 551 U.S. at 593, 127 S.Ct. 2553; *see also Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 142–43, 131 S.Ct. 1436, 179 L.Ed.2d 523 (2011); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 347, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Regardless, it appears Plaintiff has attempted to fall within this exception by alleging violation of his rights under the First Amendment and restating language regarding funding and education found in *Flast*. To establish standing,

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution.... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

*Hein v. Freedom From Religion Found., Inc.*, 551 U.S. at 602, 127 S.Ct. 2553 (quoting *Flast*, 392 U.S. at 102–103, 88 S.Ct. 1942).

The most analogous case to this scenario is *Bowen v. Kendrick*, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988), wherein taxpayers challenged the funding for services under the Adolescent Family Life

Act ("AFLA") related to "adolescent sexuality and pregnancy" as violating the Establishment Clause. The Supreme Court evaluated the AFLA under the established three-part test. *See Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (stating (1) the purpose must be secular, (2) the effect must not advance religion, and (3) the result must not cause excessive entanglement between church and state). The Supreme Court found the taxpayers had standing and held the AFLA was facially constitutional because it had a secular purpose, did not have the "primary effect of advancing religion" (despite providing for grants to religious institutions), and did not lead to "excessive government" entanglement with religion. *Kendrick*, 487 U.S. at 617, 108 S.Ct. 2562. However, the case was remanded to the district court for determination of whether the AFLA violated the establishment clause "as applied" because there was impermissible behavior by grantees and the court needed to consider evidence presented as to how the statute was being administered. *Id.* at 621–22, 108 S.Ct. 2562.

Plaintiff may argue he has standing as a taxpayer due to the similarities found within *Flast*—the appropriated funds for textbooks were authorized for local educational agencies, including religious schools—and *Kendrick*—the appropriated funds for research and services were authorized for community service groups, including religious organizations. Here, the appropriated funds for resettlement and services to refugees are authorized for public and private agencies, including religiously affiliated agencies such as Relief Services. 8 U.S.C. § 1522(b)(1)(A), (c).

■ However, Plaintiff has failed to sufficiently allege he has standing in this capacity and Federal Defendants are violating the Establishment Clause via the INA or Refugee Act as he fails to allege

how the Acts are unconstitutional on their face or as applied. The Acts, particularly as evidenced in the "Authorization for Programs for Domestic Resettlement of and Assistance to Refugees," appear facially constitutional. *See* 8 U.S.C. § 1522–24. The purpose is secular as it is to assist in the resettlement of refugees in the United States without regard to religion. *See* 8 U.S.C. § 1522(a)(5). In addition, the authorization provides specific purposes for the funds, such as assisting refugees to obtain skills necessary for economic self-sufficiency or address needs for health, social, educational, and other services that are secular and do not have the primary effect of advancing religion. *See* 8 U.S.C. § 1522(c)(1)(A). Furthermore, if entities such as Relief Services or State Defendants receive funds, they are subject to monitoring by annual reporting to a federal agency. *See* 8 U.S.C. § 1522(b)(7)–(8). This reporting and monitoring requirement appears similar to that discussed in *Kendrick* wherein the Supreme Court found that it did not lead to excessive government entanglement with religion as the grantees were not necessarily "pervasively sectarian," and, thus, it does not do so here. Therefore, Plaintiff has failed to allege how the Acts are facially unconstitutional. The Supreme Court "has never held that religious institutions are disabled by the First Amendment from participating in publicly sponsored social welfare programs." *Kendrick*, 487 U.S. at 609, 108 S.Ct. 2562.

Plaintiff alleges that Federal Defendants actions violate the INA and Refugee Act and are unconstitutional. ECF No. 46. Although not specified, this appears to be an "as applied" argument. However, Plaintiff fails to allege in his second amended complaint or point to an attached exhibit supporting that the nonprofits have committed specific incidents of impermissible behavior that would show the Acts are being administered incorrectly.[32] Without more, Plaintiff has failed to allege a plausible claim that the Establishment Clause has been violated.

Furthermore, Plaintiff's right under the Free Exercise Clause has not been violated as Plaintiff only claims that he is prevented from proselytizing due to the non-proselytizing clause imposed upon the non-profit organizations despite the fact he is not a member of the organizations and does not participate in assisting with the resettlement of refugees.

On the one hand, Plaintiff argues that Defendants violate the Establishment Clause for providing funds to Relief Services, which are religiously affiliated, nonprofit organizations. However, Relief Services maintain separation and do not intertwine their religion with their purpose of resettling refugees as is evidenced by their agreement to the non-proselytizing clause, which Federal Defendants have in place to comply with the *Lemon* test. On the other hand, Plaintiff argues the non-proselytizing clause imposed upon Relief Services violates his right under the Free Exercise Clause in the First Amendment although he is not involved in Relief Services. Plaintiff contradicts himself by claiming Relief Services proselytizes, but yet recognizes the non-proselytizing clause is in place and claims it is enforced such that

---

**32.** With regard to Plaintiff's proposed third amended complaint, the allegation that the resettlement agencies quote a scripture verse on their website does not show that the nonprofits have acted impermissibly and failed to separate religion from the purpose of refugee resettlement wherein it states, "The vision of Lutheran Services Carolinas is to fulfill the proclamation of Christ in John 10:10, 'I came that they may have life and have it abundantly.'" Available at http://www.lscarolinas.net/who-we-are/vision-mission-values/.

it prevents him from proselytizing. These conflicting positions show why Plaintiff's allegations fail to plausibly allege the Acts violate the First Amendment sufficient to convey taxpayer standing · upon him.

To the extent Plaintiff attempts to mirror language from *Exodus* regarding DACA and DAPA to claim he has standing as a taxpayer, the Supreme Court has held that the narrow exception in *Flast* does not extend to executive orders—only congressional action. *See Hein*, 551 U.S. at 604–09, 127 S.Ct. 2553. Therefore, Federal Defendants are entitled to dismissal of this suit against them.

#### 4. Summary

 Based upon the above analysis, Plaintiff does not have standing to bring these claims against Federal Defendants.[33] Therefore, this action is dismissed against Federal Defendants without prejudice.[34] *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

#### IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff moved to amend his second amended complaint throughout his responses to various Defendants' motions. At the hearing, the Court decided to allow Plaintiff forty-five days from the date of the motions hearing to submit a proposed third amended complaint (hereinafter "proposed complaint") to determine if it would be futile against select State Defendants—Governor Haley, Director of SCDSS Susan Alford, and Director of the Refugee Resettlement Plan Dorothy Addison—and Federal Defendants—President Obama, Director of Homeland Security Jeh Johnson, Assistant Secretary of State for Population, Refugees, and Migration Anne Richard, and Department of Treasury Secretary Jacob Lew.[35] This restriction was due to Plaintiff's failure to make any specific allegations or show relevancy as to the remaining State and Federal Defendants in this suit throughout his briefs and at the hearing. Thus, the remaining State and Federal Defendants were not included in the allowance for

33. Although Plaintiff asserts in his second amended complaint that standing may be conferred due to the public interest, this type of standing is not recognized in federal courts as the Supreme Court has consistently rejected public interest standing. *See Lujan*, 504 U.S. at 573–74, 112 S.Ct. 2130 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

34. This order differs from the Court's stated intention at the hearing wherein the Court dismissed the suit with prejudice as to all

Federal Defendants, except for President Obama, Director of Homeland Security Jeh Johnson, Assistant Secretary of State for Population, Refugees, and Migration Anne Richard, and Department of Treasury Secretary Jacob Lew. *See* ECF No. 122; Hrg. Trans. 62:7–12. However, the Court deems this result appropriate due to the dismissal for lack of standing.

35. Plaintiff's proposed complaint states that the Court "ruled from the bench that the Plaintiff had an additional 45 days to Amend his Complaint." ECF No. 128. This statement is inaccurate—the Court specifically stated "what you would refile would be a proposed amended complaint." ECF No. 122; Hrg. Trans. 64:18–22.

Plaintiff's submission of a proposed complaint.

Plaintiff submitted a proposed complaint for the Court's review; however, this proposed complaint evidences the futility of Plaintiff's claims and, therefore, Plaintiff's motion to amend his second amended complaint is deemed futile and denied.

The Court appreciates the slightly improved coherency of the proposed complaint; however, it still falls short as it is filled with conclusory allegations, contradicted factual assertions, irrelevant material copied from other cases, and incomplete arguments. Despite the fact that the number of defendants shrunk from twenty-five to seven, the proposed complaint grew in length to fifty-five pages and twenty-six exhibits.

Plaintiff's allegations regarding standing were made in his second amended complaint and were addressed previously. Plaintiff did not add any substantive argument to change the analysis, and, thus, it will not be addressed again. *See, e.g.*, ECF No. 128 at ¶¶ 23–26 (arguing "public interest" standing, which is not recognized in federal courts).

As to the causes of action, Plaintiff alleged sixteen causes of action against all seven defendants (with exception to the fourteenth and fifteenth causes of action): (1) violation of the Establishment Clause, (2) violation of the right to free exercise of religion, (3) violation of equal protection under the Fifth Amendment, (4) violation of the rights to free speech and association under the First Amendment, (5) "Precedent in Restraining Executive Over-Reach," (6) "Threat of Terror and Public Health," (7) "Discrimination in Public Education 42 U.S.C. § 1983," (8) "Take Care/Separation of Powers," (9) "Equal Protection Under the Law: Promotion of Criminal Activity," (10) violation of the "Take Care Clause," (11) "Violation of the APA, 5 U.S.C. § 553, [12] Violation of the APA, 5 U.S.C. § 706," (13) "Abandonment and Failing to Enforce the Immigration and Refugee Laws and the US and SC Constitutions by the United States and South Carolina Executive Branches and Subordinate Agencies," (14) "Violation of the Federal Taking Clause," (15) "Violation of the Declaration of Rights of the South Carolina Constitution," and (16) "Relief: Equitable, Injunctive, Writ of Mandamus, and other relief to declare the State Plan and Other Directives Null and Void and unconstitutional." Each cause of action will be discussed briefly below.

### 1. Violation of the Establishment Clause

Any substantive arguments made by Plaintiff were addressed in the analysis above. Despite the additional paragraphs added to support this cause of action, Plaintiff fails to recognize that the resettlement agencies are allowed to be religiously affiliated and he provides no mandatory authority or argument to allow this cause of action to survive. ECF No. 128 at ¶¶ 35–55.

### 2. Violation of the Right to Free Exercise of Religion

The Court discerns that portions of Plaintiff's proposed complaint are remarkably similar to the first amended complaint filed in *Liberty University, Inc. v. Geithner*, 753 F.Supp.2d 611 (W.D. Va. 2010), which is a readily distinguishable case from the one before this Court as the Affordable Care Act and Reconciliation Act are not applicable to the resettlement of refugees. Thus, many of the paragraphs were inapplicable to the issue at hand or were previously addressed. ECF No. 128 at ¶¶ 56–72.

### 3. Violation of Equal Protection Under the Fifth Amendment

Plaintiff's allegations are incoherent and without sufficient factual assertions to support a plausible claim. ECF No. 128 at ¶¶ 72–82.

### 4. Violation of the Rights to Free Speech and Association Under the First Amendment

Plaintiff alleges that the Government is "using tax money to give large grants to one religion over another" without factual support. ECF No. 128 at ¶¶ 84–85. Plaintiff further alleges, "The Executive directives and Federal and State Plans implemented by the respective agencies in direct violation of Plaintiff's conscience, moral beliefs, and religious conviction, *thus forcing them to subsidize and associate with people or private companies or insurance providers that fund abortion.*" *Id.* at ¶ 86 (emphasis added). This text appears to be taken from another case because it is completely irrelevant to the issue at hand—resettlement of refugees via the INA, Refugee Act, or State Plan—and the topic of abortion has not been raised once in this litigation.

### 5. "Precedent in Restraining Executive Over–Reach"

It is unclear how this count serves as a cause of action as Plaintiff only vaguely asserts that the substance of his arguments are similar to the abusive overreach found in *Texas.* ECF No. 128 at ¶¶ 91–92. In addition, Plaintiff states conclusory allegations that there is "failure to take mandatory actions of Public Laws, State Laws, and the Federal and State Constitutions, failure to properly and adequately enforce the laws involved in this lawsuit, 'rubber-stamping' official legal documents," which do not support a claim. ECF No. 128 at ¶ 92.

### 6. "Threat of Terror and Public Health"

Plaintiff claims Defendants failed "to follow the law and properly vet immigrants and refugees or to keep track of the same" and the "unilateral suspension or abandonment of the Nation's immigration laws is unlawful." ECF No. 128 at ¶ 93. In addition, Plaintiff claims there are documented incidents "where it has been proven that terrorists have used this refugee program as a vessel to gain access into the U.S.A. and South Carolina," but he only cites to a recent case in Texas for support. ECF No. 128 at ¶ 94; *see United States v. Omar Faraj Saeed Al Hardan,* Case No. 4:16–cr–00003 (S.D. Tx. 2016). Then, Plaintiff attempts to claim a personal injury because his grandfather passed away due to tuberculosis and the threat of the contagious disease spreading is increased by resettlement of refugees in the area. ECF No. 128 at ¶¶ 95–96. This allegation does not show an injury to Plaintiff and is unsupported. Furthermore, Plaintiff continues to make conclusory allegations such as the State Plan was required to be considered by the General Assembly or the State Plan is in violation of the law or Constitution without any supporting citations or explanation for his assertions. ECF No. 128 at ¶¶ 97–107.

### 7. "Discrimination in Public Education 42 U.S.C. § 1983"

Plaintiff fails to plausibly allege that the provision of interpreters to those with limited proficiency in speaking the English language increases his tax burden or does not promote assimilation of refugees in America nor does he show how this allegation provides a cause of action pursuant to 42 U.S.C. § 1983. ECF No. 128 at ¶¶ 108–111.

### 8. "Take Care/Separation of Powers"

In this cause of action, Plaintiff recites the dissent in *Sarnoff v. Shultz*, 409 U.S. 929, 930, 93 S.Ct. 227, 34 L.Ed.2d 186 (1972), verbatim for several paragraphs and in a conclusory fashion states, "This determination applies to the Plaintiffs claim that he does in fact have taxpayer standing, that the President of the United States, Barack H. Obama does not have the authority to circumvent Congress by funding the Refugee Program that is riddled with terrorists, . . . and that the funds utilized are Plaintiffs taxpayer funds." ECF No. 128 at ¶¶ 112–116. Plaintiff only states a duty is owed by Governor Haley, but then fails to allege a breach of that duty while simply claiming that President Obama does not have the authority to circumvent Congress to fund the program. However, Congress explicitly authorized appropriations for the program, not the President. *See* 8 U.S.C. § 1524. Therefore, Plaintiff has failed to state a claim.

### 9. "Equal Protection Under the Law: Promotion of Criminal Activity"

Plaintiff fails to present a valid, coherent argument for this claim as he cites to 18 U.S.C. § 2383 (regarding a rebellion or insurrection), then alleges "these newer Executive Orders are inconsistent with the INA and 1980 Refugee Act and violate the Constitution and the Establishment Clause" without stating what these executive orders are—presumably they are the State Plan and Federal or State Policies— but Plaintiff fails to connect any of the various dots intermittingly placed throughout. ECF No. 128 at ¶¶ 117–125. Instead, Plaintiff proceeds to claim "his standard of living will be affected by the violations and lack of enforcement of the laws by government agencies, to live in a safe and secure environment that is free from contagious diseases." ECF No. 128 at ¶ 126. Then,

without warning, Plaintiff begins to argue that SCDSS's mandates prohibiting the nonprofits from proselytizing to refugees violates his right to freely exercise his religion under the First Amendment. ECF No. 128 at ¶ 128. This issue has already been addressed in the discussion above. In the following paragraphs, Plaintiff simply recites information from *Texas* and *Nava-Martinez* and focuses upon the executive orders and actions within those cases. ECF No. 128 at ¶¶ 134–141. Again, Plaintiff attempts to equate the State Plan to the DACA and DAPA actions taken in *Texas*, but fails to create a viable argument. *Id.*

Within the same claim, Plaintiff goes on to argue that Governor Haley and SCDSS did not have the legal authority to enter into the State Plan because impact projections were not done and the State Plan was not approved by the General Assembly nor included in the State's budget for the year 2016. ECF No. 128 at ¶¶ 142–63. In addition, Plaintiff claims the State Plan will *eventually* overburden State resources and cause him harm. Interwoven with these allegations are previous statements already addressed above—for example, regarding the mandate not to proselytize to refugees (ECF No. 128 at ¶ 156) and the use of translators to assist refugees in transition (ECF No. 128 at ¶ 163). Plaintiff seems to believe his concern centers upon the "Federal directives, the State Plan and the Lack of proper enforcement of the INA"—improperly defined refugees (ECF No. 128 at ¶ 161); however, Plaintiff fails to articulate how he has standing to bring these claims or, furthermore, allege a plausible claim against Defendants. Lastly, Plaintiff alleges a speculative statement that retaliation may be made against him for bringing these claims without any support. (ECF No. 128 at ¶ 162).

## 10. Violation of the Take Care Clause

This claim is filled with paragraphs relating to a "DHS Directive" for undocumented immigrants and their family members. ECF No. 128 at ¶¶ 165–73. As stated previously, refugees are legally documented immigrants, and, thus, these allegations are not applicable to the case at hand.

## 11. Violation of the APA, 5 U.S.C. § 553 and 12. Violation of the APA, 5 U.S.C. § 706

Plaintiff labels both violations under the eleventh cause of action, but fails to assign a twelfth cause of action so it was entered accordingly. However, again, these allegations concern an unspecified "DHS Directive" which "purport[s] to create legal rights for millions of undocumented immigrants." ECF No. 128 at ¶¶ 175–77. Plaintiff's citation to *Texas* evidences the issue that the directives are not applicable in this case regarding refugees.

## 13. "Abandonment and Failing to Enforce the Immigration and Refugee Laws and the US and SC Constitutions by the United States and South Carolina Executive Branches and Subordinate Agencies"

Other than re-incorporating the previous 177 paragraphs, Plaintiff alleges one paragraph to state this "cause of action": "See above pertaining to ADA and INA, as well as other causes of action in accordance with the specific pleadings in the Brownsville Lawsuit as it applies to South Carolina. Main issue is the Governor has taken 2 contrary positions on this issue, leaving the taxpayers without an adequate remedy, except to petition this Honorable Court for Redress. The Plaintiff and United States Citizens and residents of [sic] South Carolina." ECF No. 128 at ¶ 179. This paragraph is simply insufficient to support this claim. In addition, as stated above, the Governor has not taken two contrary positions.

## 14. "Violation of the Federal Taking Clause"

Plaintiff's allegations that the Immigration and Naturalization Service is required to provide citizen or immigration status upon request by a federal, state, or local agency, and that this was not done for the State Plan is an inappropriate attempt to apply 8 U.S.C. § 1373. ECF No. 128 at ¶ 181. Plaintiff may have mistakenly stated his cause of action as it is even more puzzling why this cause of action—alleged only against Federal Defendants—would be supported by an allegation that Governor Haley should have submitted the State Plan as a bill to the General Assembly. ECF No. 128 at ¶ 184. In addition, the incomplete sentence regarding "section 10" and unreasonable invasions of privacy is inexplicably included. ECF No. 128 at ¶ 185.

## 15. "Violation of the Declaration of Rights of the South Carolina Constitution"

This claim only specifically references Governor Haley and is composed of incomplete sentences and citations. Therefore, like its predecessor, the paragraphs do not state a claim against any State Defendants.

## 16. "Relief: Equitable, Injunctive, Writ of Mandamus, and other relief to declare the State Plan and Other Directives Null and Void and unconstitutional"

This "cause of action" is a combination of various arguments with contradictory support—for example, Plaintiff acknowledges that the President has the authority

to determine the number of refugees to be accepted each year; however, Plaintiff argues the number is too high according to O.R.R. and the Bureau of Population, Refugee, and Migration's policy so it is unconstitutional. ECF No. 128 at ¶ 193. Furthermore, as discussed previously, Plaintiff must allege a proper cause of action in order to avail himself of the remedies requested.

Thus, Plaintiff fails to properly allege he has standing in this case, and, furthermore, fails to state a claim for any alleged cause of action he raises. Upon review of Plaintiff's proposed third amended complaint, the Court deems it would be futile to allow Plaintiff to amend his complaint again because it does not properly state a claim under Rule 12(b)(6) or show Plaintiff has standing to bring this suit under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Therefore, Plaintiff's motion for leave to file a third amended complaint is denied. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## V. CONCLUSION [36]

Plaintiff failed to state a claim upon which relief could be granted against Defendants Hammond and Spearman. Thus, Defendants Hammond and Spearman's motions to dismiss for failure to state a claim against them is granted, and this case is dismissed with prejudice as to Defendants Hammond and Spearman. ECF Nos. 70, 76.

Furthermore, Defendants Relief Services' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim against them is granted because Plaintiff failed to state a claim upon which relief could be granted. Plaintiff amended his complaint twice against Relief Services and still failed to state a claim against them. The Court finds that granting leave to amend against Relief Services would be prejudicial against them as they have already responded to Plaintiff's complaints three times. Therefore, this case is dismissed with prejudice as to Defendants Relief Services. ECF No. 75.

Moreover, State Defendants' motion to dismiss for failure to state a claim or lack of subject matter jurisdiction is granted because Plaintiff has failed to state a claim against them. Therefore, this case is dismissed against Governor Haley, Director of SCDSS Susan Alford, and Director of the Refugee Resettlement Plan Dorothy Addison without prejudice and against all other State Defendants with prejudice. ECF No. 79.

Finally, Federal Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim against them is granted because Plaintiff has failed to allege that he has standing. Therefore, this case is dismissed without prejudice as to Federal Defendants. ECF No. 105.

The Court allowed Plaintiff to submit a proposed third amended complaint against State Defendants Governor Haley, Director Addison, and Director Alford, as well as Federal Defendants President Obama, Secretary Johnson, Secretary Richard, and Secretary Lew. *See* ECF Nos. 119, 128. However, upon review of the proposed third amended complaint, the Court finds that granting Plaintiff leave to amend his complaint would be futile because he still fails to state a claim upon which relief can be granted or show he has standing to bring this suit.

---

**36.** To the extent Plaintiff claims additional causes of action or relief were requested amongst his numerous filings, Plaintiff has not properly alleged or shown he is entitled to same and they are dismissed as well.

Therefore, Plaintiff's case is hereby dismissed in its entirety.[37]

**IT IS SO ORDERED.**

37. Because Plaintiff's case is dismissed and he requested similar relief in his second amended complaint, his motion for a tempo- rary restraining order, preliminary injunction, and writ of mandamus is deemed moot and dismissed. ECF No. 48.